IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EDWARD C. CRESS,

                Plaintiff,

    v.

ANDREW SAUL,
Commissioner of Social Security,

                Defendant.

OPINION AND ORDER

20-cv-693-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Edward C. Cress seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding plaintiff not disabled within the meaning of the Social Security Act. Plaintiff contends that the administrative law judge (ALJ) erred by failing to: (1) consider a state agency reviewing physician's opinion that predates plaintiff's alleged disability onset date; (2) account for plaintiff's moderate limitations in adapting and managing himself; and (3) evaluate plaintiff's subjective symptoms properly. After reviewing the record, I am not persuaded that any of the issues cited by plaintiff warrant remand. Therefore, the commissioner's decision will be affirmed.

OPINION

      On May 4, 2018, plaintiff filed applications for a period of disability insurance benefits and supplemental security income beginning on July 30, 2016 (the amended alleged onset date), when he was 50 years old. AR 35. In a October 11, 2019 decision, ALJ Gregory

1

Smith found that plaintiff was not disabled. The ALJ determined that even though plaintiff suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the knees, hips and left shoulder; history of left knee arthroplasty; diabetes mellitus; peripheral neuropathy; obesity; headaches; major depressive disorder; and neurocognitive disorder, he had the residual functional capacity to perform a reduced range of light work. AR 21, 24. In particular, the ALJ found that plaintiff was limited to occasional stooping, kneeling, crawling, crouching and climbing of ramps, stairs, ladders, ropes and scaffolds. AR 24. Plaintiff was also restricted to simple, routine and repetitive tasks and simple work-related decisions. AR 24-25.

Relying on the testimony of a vocational expert, the ALJ found that plaintiff could still perform jobs in the national economy despite his limitations. AR 35-36. The Appeals Council denied plaintiff's appeal and plaintiff filed this appeal.

The case is now before this court to determine whether the ALJ's decision is supported by substantial evidence, that is, "sufficient evidence to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency is not high; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014).

Plaintiff challenges the ALJ's decision on three grounds. He contends that the ALJ erred by failing to: (1) consider a state agency reviewing physician's opinion that predates

plaintiff's disability onset date; (2) account for plaintiff's moderate limitations in adapting and managing himself; and (3) properly evaluate plaintiff's subjective symptoms.

A. State Agency Medical Opinion

Plaintiff argues that the ALJ erred in failing to discuss the March 3, 2015 opinion of state agency physician Dr. Syd Foster, who found that plaintiff was limited to sedentary work, AR 84-85, which means that plaintiff would be disabled under the Medical-Vocational Guidelines. AR 35, 92; 20 C.F.R. 404, Subpart P, Appendix 2, Rule 201.12. In support of his argument, plaintiff points out that the Social Security regulations state that "[w]e will articulate in our determination or decision how persuasive we find *all* of the medical opinions and *all* of the prior administrative medical findings in your case record." 20 C.F.R. § 416.920c(b) (emphasis added). However, that subsection goes on to state that

> Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. . . . We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

§ 416.920c(b)(1). Thus, the ALJ's failure to discuss Dr. Foster's opinion specifically does not mean that he erred in this respect.

Plaintiff points out that the ALJ took the time to consider the February 2015 consultative psychological examination performed by Dr. Marcus Desmonde in connection with plaintiff's prior application for benefits, AR 32, but it does not follow from that

3

consideration that his failure to discuss Dr. Foster's opinion requires a remand of plaintiff's case. First, the ALJ did not find Dr. Desmonde's opinion persuasive because it took place "several years prior to the period at issue" and plaintiff's test scores had improved by his second consultative examination in 2018. Id. Second, it was reasonable for the ALJ to address Dr. Desmonde's opinion specifically, because unlike Dr. Foster, Dr. Desmonde actually examined and evaluated plaintiff.

In any event, the ALJ wrote in his decision that he "fully considered the medical opinions and prior administrative medical findings in this case." AR 30. He also explained that after "fully considering" the medical opinions and prior administrative findings in the case, he was "generally persuaded" by the 2018 state agency medical consultant opinions that plaintiff was capable of performing work at the light exertional level. AR 30 (citing AR 102-03 (Dr. Jeffrey Nesta's July 16, 2018 opinion) and 138-41 (Dr. Patrick Belson's November 7, 2018 opinion)). Plaintiff argues that because Dr. Foster's opinion was closer to the July 2016 onset date, it is more probative of plaintiff's condition than the 2018 state consultant opinions that the ALJ considered. However, it was not unreasonable for the ALJ to consider and rely on the updated consultant opinions, which provided a more recent picture of plaintiff's condition than Dr. Foster's four-year old opinion.

Plaintiff argues that the ALJ's alleged error in not adopting Dr. Foster's opinion is "compounded by the ALJ's failure to assess the combined impact of [plaintiff's] nine severe impairments" and how these conditions worsened between 2016 and 2018. Dkt. #12 at 6. In support of his argument, plaintiff cites several progress notes from this time period that

4

document his complaints of neck, left knee, hip, leg and lower back pain, which he says are aggravated by walking and standing. Dkt. #12 at 7-9. He also cites a cervical spine x-ray and magnetic resonance imaging study from July 2018 that show further deterioration in his cervical impairment as compared to previous imaging. Plaintiff criticizes Drs. Nesta and Belson for making only a passing reference to his neck problems in 2018, AR 132 (noting plaintiff's allegations of chronic neck pain), and points out that Dr. Foster specifically mentioned plaintiff's neck pain in limiting him to sedentary work, AR 85 (exertional limitations based on "[c]hronic neck, back and knee pain due to DDD of cervical & LS spine").

However, plaintiff does not point to any evidence that the ALJ or Drs. Nesta and Belton overlooked or that would show that the combined effects of his impairments would require greater restrictions than what the ALJ found. Loveless v. Colvin, 810 F.3d 502, 508 (7th Cir. 2016) (claimant is not entitled to relief on appeal if he "does not identify medical evidence that would justify further restrictions"); Hoy v. Astrue, 390 Fed. Appx. 587, 592 (7th Cir. 2010) (rejecting argument that ALJ failed to consider effect of impairments in combination when plaintiff "only speculate[d] about the effect of these conditions on him"). Drs. Nesta and Belton reviewed plaintiff's previous application for benefits and the updated medical evidence in 2018 and reached the conclusion that plaintiff was capable of light work. As plaintiff recognizes, the ALJ also thoroughly reviewed plaintiff's medical record regarding all of his impairments, including plaintiff's imaging studies and self-reports of pain. AR 26-30. Despite the evidence cited by plaintiff, the ALJ found that:

5

- Plaintiff had a normal range of motion in his neck and displayed normal muscle strength and tone in his arms in 2017. AR 27, 934, 949, 1089 and 1325. Although plaintiff's neck pain became worse in 2018, he reported that his neck pain had improved significantly with 80 to 90 percent relief following radiofrequency ablation in September 2018. AR 1551, 1557.

- Despite plaintiff's complaints about worsening hip pain in May 2018, plaintiff maintained a good range of motion and strength in both hips, as well as a normal gait, and complained of only mild discomfort. AR 28, 932, 1418-19, 1426, 1430-31. Although plaintiff complained about hip pain when doing activities such as getting off the floor, he was not doing his home exercises regularly and required no surgery or further treatment for his hip pain. AR 28, 1484.

- Plaintiff had his left knee replaced in September 2016, but regained full range of motion in his knee after physical therapy. AR 27-28. Plaintiff's subsequent statements and x-rays indicated no complications postsurgery or further pain in his left knee. AR 28, 55, 931, 1175, 1251, 1319, 1669.

- Plaintiff had mildly limited range of motion in his right knee in May 2018, but there was no evidence of further treatment or a recommendation to get a right knee replacement, contrary to plaintiff's testimony that he was waiting for a right knee replacement. AR 28, 55, 1424-25.

- Electrodiagnostic testing of plaintiff's lower extremities in December 2018 showed moderately severe axonal peripheral polyneuropathy but no evidence of radiculopathy, and in January 2019, plaintiff reported that he had not had the shooting pain in his right lower extremity lately. AR 27, 1580-83, 1589. Even though plaintiff's diabetic neuropathy had worsened in 2018, his diabetes was well controlled by April 2019. AR 27, 1591.

Finally, contrary to plaintiff's assertion, the ALJ specifically considered the fact that obesity could further limit plaintiff in combination with his other impairments. AR 21-22, 29-30. Although plaintiff suggests that further limitations are warranted, he fails to point to any evidence that his obesity would further limit his ability to work, beyond the limitations in his RFC. Ellias v. Colvin, 2018 WL 2349515, at *2 (W.D. Wis. May 23,

2018) ("While plaintiff points to a variety of other medical conditions in the record as being possibly related to obesity, this alone does not call the ALJ's ultimate determination into question.").

In sum, even if there were some evidence supporting a different conclusion regarding plaintiff's limitations, no physician assessed more restrictive work-related limitations for him during the relevant period (2016 to 2019) than those found by the ALJ. Best v. Berryhill, 730 Fed. Appx. 380, 382 (7th Cir. 2018) (quoting Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004)) ("There is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'"). As the Seventh Circuit has said repeatedly, "even if reasonable minds could differ concerning whether [plaintiff] is 'disabled,' we must affirm the ALJ's denial of [his] disability claim if the record adequately supports it." Simons v. Saul, 817 Fed. Appx. 227, 230 (7th Cir. 2020).

## B. Adapting and Managing Limitations

The ALJ found that plaintiff had moderate limitations in adapting and managing himself based on plaintiff's reported difficulties with responding appropriately to stressors, lacking motivation to get out of bed and care for his personal needs and not taking his diabetes medications as prescribed. AR 24 (ALJ opinion), 1117 (May 26, 2016 note that plaintiff was noncompliant with diabetes medication and was not willing to increase dosage). In reaching this conclusion, the ALJ relied on the December 7, 2018 opinion of the state agency psychological consultant, JoAnne Coyle, who assessed plaintiff with moderate

7

limitations in adapting and managing himself and mild limitations in all other areas of mental functioning. AR 33. Dr. Coyle noted at the reconsideration level of review that plaintiff's psychological status was stable and his recent consultative examination revealed no gross memory impairment and only mild symptoms of depression. AR 141. Dr. Coyle further explained that even though plaintiff remained vulnerable to stress, AR 155-56, his "stress tolerance is acceptable for a stable work setting" and that he "can adapt to minor changes in routine," AR 141. After considering Dr. Coyle's opinion and other evidence of record, the ALJ restricted plaintiff to simple work-related decisions to account for plaintiff's limitations in dealing with changes in the work setting. AR 33.

Plaintiff argues that the ALJ erred by not including other limitations to account for the specific difficulties he has in maintaining his hygiene and an appropriate appearance, focusing on tasks independently without excessive breaks and controlling his behavior in dealing with others. Plaintiff contends that the ALJ should have included additional limitations, such as restrictions related to dealing with supervisors and taking breaks. In support of his argument, he points to Dr. Desmonde's February 25, 2015 consultative examination, the May 2019 third-party report of his caseworker, Lynn Engelbrecht, and his own self-reports about his mental difficulties. AR 323, 331, 391, 425-32. However, the ALJ considered all of this evidence and gave well-founded reasons for discounting it.

Plaintiff underwent a consultative psychological evaluation with Dr. Desmond in connection with his prior application for benefits. AR 425-32. In February 2015, Dr. Desmonde diagnosed multifactoral neurocognitive disorder and unspecified adjustment

8

disorder with features of increasing social isolation. AR 427. He concluded that plaintiff was capable of understanding simple instructions but might have difficulty recalling more complicated verbal instructions, could interact only briefly with coworkers, supervisors and the general public and might have difficulty tolerating the stress and pressure of full-time competitive employment. Id. The ALJ found the opinion unpersuasive because it predated the current claim period by several years, and in 2018, plaintiff underwent another consultative psychological examination, which revealed that his test scores had improved significantly since 2015. AR 32, 1499.

On December 3, 2018, Dr. Frey noted that plaintiff was unkempt and tangential but had a positive mood and affect, otherwise normal speech and communication skills, normal psychomotor activity, clear and logical thought processes, adequate insight and judgment and grossly intact, low average memory skills. AR 1498-99. He denied having suicidal thoughts or sleep difficulties and was attentive and not easily distracted. Id. Dr. Frey diagnosed mild and recurrent major depressive disorder, which was in full remission, and found that plaintiff did not meet the diagnostic criteria for a neurological impairment. AR 1500. The ALJ found persuasive Dr. Frey's opinion that plaintiff had only mild limitations in each of the four areas of mental functioning but included limitations on work complexity and pace in the RFC to account for plaintiff's symptoms. AR 31-32. In addition, the ALJ noted that plaintiff's mental status examinations during the relevant period revealed normal to mild findings.

The ALJ also considered a May 7, 2019 letter from Engelbrecht, who wrote that plaintiff processes information slowly, sleeps a lot throughout the day and forgets appointments and taking his medications. AR 391-92. The ALJ explained that Engelbrecht is not a medical provider and is not trained to recognize specific symptoms and tie them to functional limitations, and that her report was not consistent with those of the medical doctors in plaintiff's case. AR 33. As discussed further below, the ALJ also gave well-founded reasons for not finding plaintiff's subjective complaints entirely persuasive.

In sum, the ALJ was entitled to rely on the opinion of Dr. Coyle. His conclusion regarding plaintiff's limitations in adapting and managing himself is supported by substantial evidence and does not provide a basis for remand.

### C. Subjective Symptoms

An ALJ's findings about a plaintiff's testimony and allegations regarding his symptoms are entitled to great deference, and should be upheld unless patently wrong. Summers v. Berryhill, 864 F.3d 523, 528 (7th Cir. 2017). An ALJ is only required to give reasons sufficient to provide a fair sense of how the ALJ assessed plaintiff's testimony and statements. Social Security Ruling (SSR) 16-3p. Moreover, the ALJ does not need to explain why each of the claimant's statements deserved little weight. Shideler v. Astrue, 688 F.3d 306, 312 (7th Cir. 2012). The court reads the decision as a whole to determine whether the ALJ adequately supported the subjective-symptom evaluation. Curvin v. Colvin,

778 F.3d 645, 650 (7th Cir. 2014). Not all of the ALJ's reasons have to be sound as long as enough of them are. Halsell v. Astrue, 357 Fed. Appx. 717, 722-723 (7th Cir. 2009).

Plaintiff contends that the ALJ failed to give proper consideration to plaintiff's subjective symptoms because the ALJ relied too heavily on plaintiff's daily activities and failed to acknowledge that plaintiff required frequent rest breaks and engaged in these activities only sporadically without prolonged standing, walking or lifting. See Scrogham v. Colvin, 765 F.3d 685, 698 (7th Cir. 2014) (ill-advised activities cannot support conclusion that claimant is capable of performing full-time work). However, the ALJ did not conclude that plaintiff could work full-time because he was able to perform certain daily activities. Rather, he concluded that plaintiff's allegations of his pain and limitations were not supported by the overall record. AR 26.

The ALJ discussed the fact that plaintiff was able to live independently in his own apartment in 2017 and later was able to perform his daily chores at a Salvation Army shelter if he took rest breaks. AR 24 (citing AR 1328-29 (October 12, 2017 progress note discussing plaintiff's living arrangements and activities)). He also pointed out that plaintiff volunteered at an art gallery, babysat his girlfriend's one and a half year old grandchild and engaged in several hobbies, including art, visiting a nearby park for a couple of hours to fish or surf the internet and playing video games. AR 26 (citing AR 1283 (April 12, 2017 progress note) and AR 924 (July 24, 2017 progress note)). The ALJ noted that in 2018, plaintiff reported being able to carry a six-pack of liter bottles of soda and lift and carry a large a television. AR 34, 1406-07 and 1409. Although plaintiff argues that none of these

11

activities involved a substantial amount of time and some of them caused him pain, the ALJ reasonably concluded that plaintiff's level of activity was inconsistent with the severity of symptoms and limitations that he alleged. AR 34.

In addition to plaintiff's daily activities, the ALJ extensively reviewed plaintiff's medical record, which showed several normal or pain-free exams and the improvement with treatment of some of plaintiff's symptoms. See, e.g., AR 26-29; 1339 (December 11, 2017 physical therapy evaluation showing full strength and full range of motion without pain in hips, back and knees); AR 1484 (July 2018 physical therapy notes that plaintiff's hip pain had improved even though he had not been doing his exercises regularly); 1551 (80 to 90 percent improvement in neck pain following ablation procedure); 1557 (back pain improved 20 to 30 percent since ablation procedure). The ALJ found it significant that plaintiff had not needed surgery on his back, neck, hip or right knee and that his left knee replacement seemed to be successful. The ALJ also noted that plaintiff's diabetes came under better control when his compliance improved. AR 34.

Finally, the ALJ found that plaintiff's self-reported statements contained several inconsistencies. For example, the ALJ noted that (1) plaintiff testified that he was waiting for a right knee replacement but the record contained no such order; (2) plaintiff testified that he had radicular pain in his right leg but he reported in January 2019 that he had not had shooting pains into his right leg recently; (3) plaintiff testified that he received so little relief with radiofrequency ablation that it was discontinued, but the record shows that he received 80 to 90 percent relief with the procedure; and (4) plaintiff testified that reaching

strained his shoulder injury but he told his physical therapist that his shoulder pain did not bother him the majority of the time. AR 34, 55, 1283, 1424-25, 1551, 1557, 1580-83, 1589.

Plaintiff attempts to explain the inconsistencies in his testimony, dismissing some as minor, and challenges the significance of the medical improvements cited by the ALJ by pointing to his subsequent complaints of pain. For example, plaintiff points out that after reporting an 80 to 90 percent improvement in neck pain following the September 2018 ablation procedure, a November 2018 examination showed tenderness to palpation in his thoracic spine and he reported that his back and leg pain was aggravated by standing and walking. AR 1557-58. However, contrary to plaintiff's suggestion, the fact that plaintiff continued to report having leg and back leg pain and difficulty walking and standing does not mean that the ALJ mischaracterized the record with respect to the improvement in his neck pain following the radiofrequency ablation procedure. Similarly, the fact that plaintiff's December 2018 EMG study showed moderately severe axonal peripheral polyneuropathy does not mean that the ALJ either mischaracterized or improperly relied on plaintiff's January 2019 report that he was not having radicular pain.

Essentially, most of plaintiff's arguments contest the manner in which the ALJ weighed the evidence. Wolfgram v. Berryhill, 2020 WL 433994, at *17 (E.D. Wis. Jan. 27, 2020). It is not the court's role to re-weigh the evidence, resolve conflicts or decide questions related to credibility. Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008) ("When assessing an ALJ's credibility determination, we do not . . . undertake a de novo review of

the medical evidence that was presented to the ALJ. Instead, we merely examine whether the ALJ's determination was reasoned and supported."); Jens v. Barnhart, 347 F.3d 209, 212 (7th Cir. 2003). The fact that a different fact-finder could have weighed the evidence differently does not make the decision patently wrong. Schloesser v. Berryhill, 870 F.3d 712, 717 (7th Cir. 2017); Kolar v. Berryhill, 695 Fed. Appx. 161, 162 (7th Cir. 2017) ("Almost any conclusion an ALJ reaches in such situations may be inconsistent with some evidence in the record and consistent with other evidence.").

Plaintiff also takes issue with the fact that the ALJ found it significant that plaintiff (1) told his mental health treatment provider that he was not able to find a job yet because he did not have a car; and (2) reported in July 2017 that he might have to look for work because his application for disability benefits had been denied. AR 34, 1310, 1398. It is not entirely clear how these particular statements about finding a job show that plaintiff's subjective symptoms were inconsistent with the record. See Voigt v. Colvin, 781 F.3d 871, 876 (7th Cir. 2015) (wanting to work not inconsistent with disabling limitations). However, even if the ALJ's evaluation of plaintiff's statements was not perfect, it does not mean the ALJ's entire subjective symptom evaluation was "patently wrong." Gomez v. Saul, 2019 WL 2524831, at *4 (E.D. Wis. June 18, 2019) (citation omitted). The ALJ provided several other well-founded reasons for not giving greater weight to plaintiff's subjective complaints.

For all of the above reasons, I find that the ALJ's decision is thorough and generally well reasoned and none of the issues cited by plaintiff warrant remand. Accordingly, I will affirm the commissioner's decision denying benefits.

ORDER

IT IS ORDERED that the that the decision of defendant Andrew Saul, Commissioner of Social Security, is AFFIRMED and plaintiff Edward C. Cress's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 9th day of July, 2021.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge